UNITED STATES JUDICIAL PANEL
on
MULTIDISTRICT LITIGATION

IN RE: UBER TECHNOLOGIES, INC.,
PASSENGER SEXUAL ASSAULT LITIGATION          MDL No. 3084

**TRANSFER ORDER**

**Before the Panel:** Defendants Uber Technologies, Inc. and Rasier, LLC (together, Uber), in the action listed on Schedule A (*K.P.*) move under Panel Rule 7.1 to vacate our order that conditionally transferred the action to the Northern District of California for inclusion in MDL No. 3084. Plaintiff opposes the motion.

After considering the argument of counsel, we find that this action involves common questions of fact with the actions transferred to MDL No. 3084, and that transfer under 28 U.S.C. § 1407 will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. In our order centralizing this litigation, we held that centralization was warranted for actions sharing factual questions arising from allegations that Uber failed to implement appropriate safety precautions to protect passengers, and that plaintiffs suffered sexual assault or harassment as a result. *See In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, __ F. Supp. 3d __, 2023 WL 6456588 (J.P.M.L. Oct. 4, 2023). Like plaintiffs in MDL No. 3084, plaintiff in *K.P.* alleges that she used the Uber app to request a ride and was assaulted by her driver, and that, despite Uber's awareness as early as 2014 that its drivers were physically assaulting passengers, its response has been inadequate.

In opposing transfer, Uber argues that *K.P.* "does not involve common questions of fact" with the MDL No. 3084 cases, because the alleged assault took place in Dubai, UAE, and therefore it involves unique international issues, evidence, and witnesses. *See* Br. in Support of Mot. to Vacate, MDL No. 3084 (J.P.M.L. Dec. 12, 2023), ECF No. 130-1, at p. 5. While this action certainly will involve some unique issues not yet involved in the MDL, we disagree that it does not involve common factual questions. Like the complaints in MDL No. 3084, *K.P.* alleges that Uber (1) knew of the prevalence of sexual assault by its drivers and failed to adequately respond; (2) focused on growth over safety; (3) charged a "safe rides fee" but did not use the money to protect passengers; (4) performed inadequate background checks of drivers; (5) did not include features in its app that would make passengers safer; (6) kept dangerous drivers on the road even after negative reports; and (7) represented to passengers that rides with Uber are safe. As it did in opposing centralization, Uber argues that unique factual issues concerning Uber's ultimate liability will predominate. But, as we noted in granting centralization, "almost all injury litigation involves questions of causation that are case- and plaintiff-specific. Such differences have not been an impediment to centralization in the past." *In re Uber*, 2023 WL 6456588, at *1 (quotation omitted).

Case 3:23-md-03084-CRB   Document 249   Filed 02/05/24   Page 2 of 4
Case 1:23-cv-02580-GLR   Document 17   Filed 02/08/24   Page 2 of 4

- 2 -

Plaintiff, a resident of Maryland, alleges that "Uber was well aware of the dangers its drivers posed, yet it still induced, and continues to induce, the public, including Plaintiff, to rely on Uber as a safe means of transportation." *K.P.* Compl., C.A. 1:23-02580 (D. Md. Sept. 22, 2023), ECF No. 1, at ¶ 106. Plaintiff also alleges that "Uber represented to Plaintiff and the general public that safety was Uber's top priority, and it was Uber's goal to make every ride safe, comfortable, and reliable. At the same time, Uber already knew that a number of its drivers had preyed on vulnerable female passengers by sexually molesting, assaulting, harassing, and/or raping them." *Id*. at ¶ 142. This conduct is alleged to have taken place not in Dubai, but in the United States, where Uber and its executives reside. *See id.* at ¶ 1 ("This culture was put in place by Uber's officers and directors …."), 84-86 (alleging Uber marketed itself as a safe company providing safe rides in emails to sent to customers, including plaintiff, and on its website). Thus, *K.P.* and the MDL actions will involve common discovery regarding these allegations. Similarly, this action will involve common discovery regarding, *inter alia*, Uber's knowledge of the prevalence of sexual assault by Uber drivers and the safety features it chose to include or not include in its app and during Uber rides.

Transfer also will allow for streamlined briefing of common pretrial motions. For example, plaintiff suggests she and the MDL No. 3084 plaintiffs intend to challenge the enforceability of Uber's Terms of Use. Not all plaintiffs will be subject to the same version of Uber's Terms of Use, and their applicability to a particular action may vary. But coordinated briefing on their enforceability will minimize duplicative efforts by counsel and the courts, and allow for consistent rulings.

Uber argues that transfer will be inefficient and inconvenient, because any common issues will be overwhelmed by a "myriad of extraterritorial hurdles." Br. in Support of Mot. to Vacate, ECF No. 130-1, at p. 2. Uber claims that a different Uber entity is responsible for incidents in the UAE, that obtaining foreign discovery will be procedurally difficult, and that *K.P.* will involve unique choice-of-law issues. It is true that none of these issues currently are at play in MDL No. 3084, and therefore transfer will introduce additional complexity to the proceedings. But these issues will need to be addressed whether or not the action is included in MDL No. 3084. Including *K.P.* in the common proceedings underway in MDL No. 3084 will allow for it, and the litigation as a whole, to proceed more efficiently than if it were pending in a different district court outside the MDL and engaged in parallel discovery and pretrial proceedings. The transferee court can structure proceedings in a streamlined manner to accommodate unique international issues, while also minimizing duplicative discovery and proceedings. If the transferee judge determines that continued coordinated or consolidated pretrial litigation of this or any action or group of actions will not enhance justice and efficiency, he can suggest Section 1407 remand with a minimum of delay. *See* Panel Rules 10.1-10.3.

Uber suggests that transfer of this action involving an alleged assault in a foreign jurisdiction will "open the floodgates" to additional international cases. Br. in Support of Mot. to Vacate, ECF No. 130-1, at p. 10. We have rejected the argument that centralization is not warranted because it might encourage the filing of additional actions. *See, e.g.*, *In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, 65 F. Supp. 3d 1402, 1405 (J.P.M.L. 2014). While inclusion of cases involving alleged assaults in different foreign jurisdictions may add some unique issues, it

Case 3:23-md-03084-CRB   Document 249   Filed 02/05/24   Page 3 of 4
Case 1:23-cv-02580-GLR   Document 17   Filed 02/08/24   Page 3 of 4

- 3 -

also allows all similar cases to proceed before a single court, which maximizes the efficient conduct of common discovery and pretrial proceedings.

IT IS THEREFORE ORDERED that the action listed on Schedule A is transferred to the Northern District of California and, with the consent of that court, assigned to the Honorable Charles R. Breyer for inclusion in the coordinated or consolidated pretrial proceedings.

PANEL ON MULTIDISTRICT LITIGATION

_____
Karen K. Caldwell
Chair

| Nathaniel M. Gorton | Matthew F. Kennelly |
| David C. Norton | Roger T. Benitez |
| Dale A. Kimball | Madeline Cox Arleo |

I hereby certify that the annexed instrument is a true and correct copy of the original on file in my office.

ATTEST:
MARK B. BUSBY
Clerk, U.S. District Court
Northern District of California

by: _____
Deputy Clerk
Date: 02/05/2024

**IN RE: UBER TECHNOLOGIES, INC.,**
**PASSENGER SEXUAL ASSAULT LITIGATION**                                MDL No. 3084

## SCHEDULE A

<u>District of Maryland</u>

P. v. UBER TECHNOLOGIES, INC., ET AL., C.A. No. 1:23−02580